UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
FAUSTO DELGADO, *on behalf of Plaintiff and
similarly situated individuals*,

                    Plaintiff,

      -against-

ALL SHORE MARINE CONSTRUCTION INC.

                   Defendant.
------------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
22-CV-340 (AMD) (ARL)

**LINDSAY, Magistrate Judge:**

Before the Court, on referral from District Judge Donnelly, is the defendant's motion to enforce a settlement reached at a mediation held on October 26, 2023. For the reasons set forth below, the undersigned respectfully recommends that the motion be granted.

## BACKGROUND

The plaintiff, Fausto Delgado ("Delgado"), commenced this action on January 20, 2022, alleging that the defendant, All Shore Marine Construction, Inc. ("All Shore"), failed to pay him overtime wages in violation of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") and violated the Wage Theft Prevention Act. ECF No. 1. At the time, Delgado was represented by Lawrence Spasojevich, Esq. ("Spasojevich").

In late April, Judge Donnelly directed Delgado to file proof that the complaint had been served on the defendant within 90 days of its filing, or, if not, to indicate whether there was good cause to extend the deadline for service. Spasojevich responded that he had been in a motor vehicle accident. Without waiting for a response from the Court, Spasojevich then served the defendant by service on the Secretary of State. On May 6, 2022, over the defendant's objection, Judge Donnelly formally extended the plaintiff's time to effectuate service. All Shore answered

two weeks later.  ECF No. 9.

On June 7, 2022, before the undersigned had issued an Initial Discovery and Mediation Order, Marco Antonio Jaruquin ("Jaruquin") filed a consent to join the action although it had not been collectively certified.  ECF No. 12.  Rather than filing a motion for conditional certification, on December 14, 2022, Delgado filed a motion for leave to file an amended complaint seeking to add Jaruquin as a named plaintiff and to include claims for retaliation in violation of the FLSA and NYLL.  ECF No. 14.  However, Spasojevich filed the motion without first filing a premotion conference letter in violation of Judge Donnelly's rules.  Accordingly, at the Court's direction, on January 12, 2023, Spasojevich filed a pre-motion conference request, which attached a proposed amended complaint that was different from the one he had filed on December 14, 2022.  ECF No. 16.  Specifically, the new version of the proposed amended complaint also sought to add a third plaintiff - Luis Chucino ("Chucino").

On February 21, 2023, a pre-motion conference was held before Judge Donnelly, during which she directed the parties to proceed to mediation.  She further directed the plaintiff to notify the Court by March 23, 2023, if he intended to proceed with the proposed amended complaint and to state the outcome of the mediation.  Consistent with Judge Donnelly's rulings, on March 7, 2023, the parties were referred to mediation by the undersigned.  Although the mediation was not conducted until October 26, 2023, on March 24, 2023, Delgado did advise the Court that he intended on filing the proposed amended complaint in the event the mediation failed.  ECF No. 21.

In fact, in October, Jaruquin and Chucino appeared with Delgado at the mediation despite the fact that they had not been formally joined as plaintiffs.  According to counsel for All Shore, Jaruquin and Chucino were permitted to participate because it was the intention of the parties to

2

resolve all of the claims set forth in both the original complaint and the proposed pleadings. Evincing that intent, Juan Tacoris ("Tacoris"), principal of All Shore, also participated at the mediation.  Tacoris had been named as a defendant in both versions of the proposed amended complaint but not in the operative pleading.

On November 1, 2023, the Court received notice from the ADR Program that the case had settled.  Notably, before the Court received that notice, the parties had already exchanged several versions of a "mediation agreement" intended to memorialize the terms that would later be incorporated into a more formal settlement agreement.  ECF No. 33.  Then, on December 14, 2023, Spasojevich filed a letter advising that the parties had "reached an agreement in principle to resolve th[e] matter." ECF No. 24.  Shortly thereafter, counsel for the parties exchanged a draft settlement agreement.  *See* ECF 32-6.[1]  The draft agreement lists Delgado as the plaintiff and Jaruquin and Chucino as opt-in plaintiffs and contains compensation terms for each of the individuals.   The draft agreement also contains the following release:

> In exchange for the payments identified in Paragraph 2 and in exchange for the other considerations supporting this Agreement, Plaintiffs, on their own behalf and on behalf of their descendants, dependents, heirs, executors, administrators, and assigns, fully, finally and forever agrees unconditionally to release and discharge Defendant and any and all related or affiliated businesses or business entities, their shareholders, executives, managers, including Juan Tacoris (collectively, the "Releasees"), from all causes of action arising under the Fair Labor Standards Act, the New York Labor Laws, and/or any federal, state or local wage statute, regulation, government wage order, code, or ordinance concerning wage and hour matters, from the beginning of time through the date of Plaintiffs' execution of this Agreement. Plaintiffs agree that they are releasing the claims set forth in this Paragraph, whether or not they are known to them at the time they sign this Agreement.
>
> This release of wage and hour claims includes, but is not limited to, all claims for unpaid minimum wage, overtime, commissions, whether based on common law or otherwise, and all claims for improper deductions, failure to provide

---

[1] The draft settlement agreement was submitted to the Court as an attachment to a Motion to Seal.  That motion was denied on April 11, 2024.  The only document that remains under seal is the declaration of Spasojevich. ECF No. 33.

statutory notices, failure to provide accurate pay stubs, travel time, spread of hours pay, tips, uniforms, call-in pay, bonuses, expenses, reimbursements and gratuities during Plaintiffs' employment with the Defendant and any other compensation or wages, liquidated damages, compensatory damages, punitive damages, penalties, attorneys' fees, interests and/or costs related to the claims filed in this Action.

*Id*. Although the release provision in the draft agreement broadly refers to all causes of action arising under the FLSA, NYLL or any federal, state or local wage statute, it is clear from Spasojevich's recent affidavit, the details of which remain under seal, that the parties intended the release to cover both the wage and retaliation claims set forth in the operative and proposed amended pleadings. ECF No. 33. In fact, the only claims excluded from the draft release provisions were potential charges or complaints to be filed by the plaintiffs with the U.S. Equal Employment Opportunity Commission, the National Labor Relations Board, the United States Securities and Exchange Commission, or any other federal, state, or local agency charged with the enforcement of any laws. But even with respect to those claims, the language included a waiver of the right to recover monetary damages associated with any such claims based on events occurring prior to the date of the agreement. *Id.*

It appears the parties never executed the draft agreement and, on February 29, 2024, the date the settlement papers were due to be filed, Delgado filed a consent to replace his counsel with John Troy ("Troy").[2] ECF No. 27. Simultaneously, Troy filed a request for an extension of time to file the settlement papers indicating that the plaintiff was considering whether or not he wished to execute a formal settlement for the Court's approval or to proceed with his claims. ECF No. 28. On March 13, 2024, in response to the application, the Court entered an order granting the request for an extension of time to file the settlement papers to March 29, 2024. But, in doing so, the Court made clear that it was denying counsel's request to extend the

---

[2] Troy has not appeared on behalf of Jaruquin and Chucino.

deadline to enable the plaintiff to move forward with the case. The Court noted that prior to counsel's substitution, the parties had reported the case settled and had agreed upon settlement terms.

By letter motion dated March 28, 2024, defense counsel notified the Court that the plaintiffs were now taking the position that they had only agreed to resolve their wage and hour claims at the mediation – not their retaliation claims. More specifically, Troy stated that the settled claims were limited to those raised in the operative complaint and thus, only included unpaid wage claims. Yet, he sought to include recovery for Jaruquin and Chucino despite the fact that they were not named as parties in that operative pleading. Upon receipt of the letter motion, the Court directed Spasojevich to submit an affidavit under seal outlining the settlement terms that were agreed upon at the mediation, which he did.

As indicated above, although Spasojevich's declaration remains under seal, the Court wishes to highlight two non-privileged facts. First, there is no question that Spasojevich represented Delgado, Chucino and Jaruquin at the mediation supporting defense counsel's argument that the parties had intended to resolve the claims set forth in the proposed amended complaints. Second, Spasojevich believed that the parties had settled both the wage and hour and the retaliation claims. Accordingly, in order to facilitate discussions between counsel, the undersigned unsealed Spasojevich's declaration for the limited purpose of providing plaintiffs' current counsel and defense counsel a copy. Despite doing so, Troy wrote to the Court on April 19, 2024 indicating that his clients only wished to go forward with the settlement of the FLSA claims. The motion before the Court was filed shortly thereafter. On September 18, 2024, Judge Donnelly referred the defendants' motion to enforce settlement to the undersigned.

**DISCUSSION**

A motion to enforce a settlement agreement is fundamentally a claim for breach of contract construed in accordance with general principles of contract law. *See Lee v. Grove Grp. Advisors LLC*, No. 1:20-CV-05937 (ALC), 2024 WL 1077894, at *2 (S.D.N.Y. Feb. 29, 2024) (citing *Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437, 444 (2d Cir. 2005); *United States v. Prevezon Holdings, Ltd.*, 289 F. Supp. 3d 446, 450 (S.D.N.Y. 2018)).[3]  "Under New York law, an enforceable settlement agreement requires 'an offer, acceptance, consideration, mutual assent and intent to be bound.'" *Lee*, 2024 WL 1077894, at *2 (citing *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004)).  But, to be binding, the parties must have agreed on all of the essential terms that required negotiation. *Samuel v. Aron,* No. 19 CV 5229 MKB TAM, 2022 WL 17853228, at *3 (E.D.N.Y. Sept. 14, 2022), report and recommendation adopted, No. 19 CV 5229 MKB TAM, 2022 WL 17852022 (E.D.N.Y. Dec. 22, 2022) (citing *Murphy*, 32 F.4th at 150).  Accordingly, the ultimate issue is "whether the parties intended to be bound, and if so, to what extent." *Id.* (citing *Vacold LLC v. Cerami,* 545 F.3d 114, 125 (2d Cir. 2008)). "When a court determines that a settlement agreement was in fact reached, . . . 'it is an elementary principle of contract law that a party's subsequent change of heart will not unmake a bargain already made.'" *Lee,* 2024 WL 1077894, at *2 (citing Omega Eng'g, Inc., 432 F.3d at 445).[4]

In *Murphy v. Inst. of Int'l Educ.*, 32 F.4th 146, 150-51 (2d Cir. 2022), the Second Circuit described a framework it has adopted for analyzing preliminary agreements such as the one in

---

[3] A district court has the power to enforce a settlement agreement reached in a case that was pending before it on motion. *Murphy v. Inst. of Int'l Educ.*, No. 19 CIV 1528 ALC RWL, 2020 WL 6561603, at *4 (S.D.N.Y. July 27, 2020), report and recommendation adopted, No. 19-CV-1528 (ALC), 2020 WL 5658628 (S.D.N.Y. Sept. 23, 2020), aff'd, 32 F.4th 146, 150 (2d Cir. 2022) (citing *Meetings & Expositions, Inc. v. Tandy Corp.*, 490 F.2d 714, 717 (2d Cir. 1974)).

[4] "The party seeking to enforce a purported settlement agreement bears the burden of proving that a binding and enforceable agreement exists. *Samuel,* 2022 WL 17853228, at *3 (citing *Benicorp Ins. v. Nat'l Med. Health Card Sys., Inc.,* 447 F. Supp. 2d 329, 335 (S.D.N.Y. 2006)).

6

this case.  Specifically, the Second Circuit noted that there are two types of preliminary contracts

recognized under New York law:

> The first (Type I) 'occurs when the parties have reached complete agreement
> (including the agreement to be bound) on all the issues perceived to require
> negotiation.' This kind of agreement is preliminary 'only in the sense that the
> parties desire a more elaborate formalization of the agreement,' which,
> although not necessary, is desirable.  The second (Type II) 'is one that
> expresses mutual commitment to a contract on agreed major terms, while
> recognizing the existence of open terms that remain to be negotiated.'

*Murphy,* 32 F.4th at 150 (quoting *Teachers Ins. & Annuity Ass'n of Am. v. Tribune Co.*, 670 F.

Supp. 491, 498 (S.D.N.Y. 1987)).  "In the context of settlement agreements reached at

mediation, the court in *Murphy* opined that:

> In all but the most unusual circumstances, mediation agreements that include
> express language indicating that the parties have reached agreement on all
> material terms are presumptively Type I agreements — unless the parties
> explicitly reserve the right not to be bound by the mediation agreement's terms
> until a final agreement is drafted and signed.

*Samuel,* 2022 WL 17853228, at *4 (citing Murphy, 32 F.4th at 153)).

The Second Circuit has also adopted four "helpful" factors that can be used in

determining whether something constitutes a Type I agreement:  (1) whether there has been an

express reservation of the right not to be bound in the absence of a writing; (2) whether there has

been partial performance of the contract; (3) whether all of the terms of the alleged contract have

been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually

committed to writing."  *Id*. (citing *Winston v. Mediafare Entertainment Corp.,* 777 F.2d 78, 80

(2d Cir. 1985)).  In this case, there was no express reservation of the right not to be bound in the

absence of a writing.  In fact, both defense counsel and the plaintiffs' former counsel who

participated at the mediation agree that the parties had resolved the claims set forth in both the

original and the proposed amended complaints including the plaintiffs' retaliation claims.  In

addition, the settlement agreement at issue is the type of contract usually committed to writing following a mediation.  And, while the draft agreement was not ultimately executed, the facts clearly evince the parties' intent to be bound by the terms set forth in the mediation agreement including the provision intended to release the plaintiffs' wage and retaliation claims.  For all of these reasons, the Court finds that the parties had reached a binding agreement to settle all of the claims in both the original and the proposed complaints, and thus, recommends that the defendant's motion be granted.  The undersigned further recommends that the parties be directed to submit the final settlement agreement consistent with those terms to the Court for approval pursuant to *Cheeks v. Freeport Pancake House,* 796 F.3d 199 (2d Cir. 2015), cert. denied, 136 S. Ct. 824, 193 L. Ed. 2d 718 (2016).

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served by the Court on the parties.  Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  Such objections shall be filed with the Clerk of the Court via ECF.  Any requests for an extension of time for filing objections must be directed to Judge Donnelly prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections will result in a waiver of those objections for purposes of appeal of the District Court's Order.  *See* 28 U.S.C. § 636(b)(1); Fed R. Civ. P 72; *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.,* 596 F.3d 84, 92 (2d Cir. 2010); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchant's Bank*, 84 F.3d 52, 60

(2d Cir. 1996).


Dated: Central Islip, New York
       January 2, 2025

                                        _____/s_____
                                          ARLENE R. LINDSAY
                                          United States Magistrate Judge