

Counseling and Advising Clients Exclusively on Laws of the Workplace

Zabell & Collotta, P.C.
1 Corporate Drive
Suite 103
Bohemia, New York 11716
Tel.  631-589-7242
Fax.  631-563-7475
www.Laborlawsny.com

Ryan M. Eden, Esq.
Email:  REden@laborlawsny.com

August 8, 2025

<u>*VIA* ELECTRONIC CASE FILING</u>

The Honorable Ann M. Donnelly
United States District Court Judge
United States District Court
Eastern District of New York
225 Cadman Plaza
Brooklyn, NY 11201

   Re: <u>Fausto Delgado vs. All Shore Marine Construction, Inc.</u>
     <u>Case No. 22-cv-00340 (AMD) (ARL)</u>

Your Honor:

  This firm is counsel to Defendant in the above-referenced matter. We write jointly with Counsel for Plaintiffs, Troy Law, PLLC, respectfully seeking judicial approval of the proposed settlement resolving Plaintiffs' claims brought under the Fair Labor Standards Act ("FLSA"). As the Court is aware, at the mediation held on October 26, 2023, the Parties not only resolved the claims of Fausto Delgado, but, also resolved the claims of Marco Antonio Jaruquin and Luis Chucino who were each identified as Plaintiffs in the Proposed Amended Complaint filed on January 12, 2023. The Parties submit the Settlement Agreement for the Court's review and approval pursuant to the Court's Order of February 19, 2025 and in accordance with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). *See Wolinsky v. Scholastic Inc.,* 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012).

**Defendants' Position:**

<u>Procedural History</u>

  This litigation originally commenced as a single Plaintiff action on behalf of Plaintiff Fausto Delgado. A complaint was filed on behalf of Mr. Delgado by his former counsel, Lawrence Spasojevich, Esq., then of Aidala, Bertuna & Kamins, P.C., on January 20, 2022. Mr. Delgado alleged claims for failure to pay overtime wages in violation of the FLSA and NYLL as well as violations of the Wage Theft Prevention Act. Defendant filed an Answer on May 19, 2022. On June 22, 2022, Plaintiff filed a Consent to Join Collective Action form executed by Marco Antonio Jaruquin. [ECF Doc. 12]. The Court entered an Initial Discovery and Mediation Order on October 25, 2022.

  On December 14, 2022, Plaintiff Delgado filed a Motion for leave to file an Amended Complaint. [ECF Doc. 14]. Plaintiff's Motion included a Proposed Amended Complaint. [ECF Doc. 14-1]. The Proposed Amended Complaint sought to name an additional Plaintiff, Marco

Zabell & Collotta, P.C.
EMPLOYMENT COUNSELING, LITIGATION, LABOR & BENEFITS LAW

August 8, 2025
Page 2 of 9

Antonio Jaruquin. Additionally, the Proposed Amended Complaint included claims for retaliation in violation of the FLSA and NYLL. The Proposed Amended Complaint also included an additional Defendant – Juan Tacoris. On December 15, 2022 the Court entered an Order directing Plaintiff to file a request for a pre-motion conference in accordance with the Court's Individual Rules of Practice. On January 12, 2023, Plaintiff filed a pre-motion conference request which included a Proposed Amended Complaint. [ECF Docs. 16 & 16-1]. This was a different Proposed Amended Complaint than the one filed on December 14, 2022. In the January 12, 2023 Proposed Amended Complaint, Mr. Spasojevich named a third Plaintiff – Luis Chucino. (Fausto Delgado, Marco Antonio Jaruquin, and Luis Chucino shall hereinafter The January 12, 2023 Proposed Amended Complaint included claims of retaliation in violation of both the FLSA and NYLL. The January 12, 2023 Proposed Amended Complaint also included an additional Defendant – Juan Tacoris (All Shore Marine Construction and Mr. Tacoris shall be collectively referred to herein as "Defendants.").

A pre-motion conference was convened on February 21, 2023. At the conference, the Parties were directed to proceed to mediation, and, if the matter was not resolved by March 23, 2023, Plaintiffs were to advise if he intended on proceeding with their Proposed Amended Complaint. On March 6, 2023, Plaintiffs filed a joint status report indicating that the Parties sought referral to the EDNY's mediation program. A referral Order was subsequently issued on March 7, 2023. Plaintiffs filed a status report on March 24, 2023 and advised they intended on filing the Proposed Amended Complaint in the event the mediation failed.

Prior to proceeding to mediation, the Parties engaged in limited discovery in accordance with the Court's Initial Discovery and Mediation Order of October 25, 2022. Consistent with that Order, the Parties exchanged documents relating to the claims and defenses raised by the Parties. Included amongst Defendants' production were time and payroll records relating to Plaintiffs' employment. Specifically, Defendants produced Plaintiffs' paystubs and timesheets. Paystubs produced by Defendants confirmed that Plaintiffs were paid at a rate of time and a half their regular rate of pay for hours worked in excess of forty (40) hours in a given week. Plaintiffs were also required to serve responses to the Court's Interrogatories. On or about December 14, 2022, Plaintiffs served Interrogatory Responses on behalf of Plaintiffs Delgado and Jaruquin. Plaintiff Chucino was not a party at the time the Interrogatory Responses were served and so no Response was served on his behalf.

The mediation was eventually conducted on October 26, 2023. James A. Brown was the EDNY mediator selected by the Parties. Mr. Spasojevich appeared along with his then clients, Fausto Delgado, Marco Antonio Jaruquin, and Luis Chucino. Saul Zabell appeared on behalf of Defendant All Shore Marine as well as Juan Tacoris – who was named as a Defendant in both the December 14, 2022 Proposed Amended Complaint and the January 12, 2023 Proposed Amended Complaint. After several hours of hard fought, arm's length negotiations, the Parties reached an agreement to resolve all of Plaintiffs' claims – including those identified in the January 12, 2023 Proposed Amended Complaint. The Parties agreed that a written agreement would be executed to memorialize the principal terms of the Parties' agreement (the "Principal Settlement Agreement"). Several drafts of the Principal Settlement Agreement were exchanged prior to the completion of



August 8, 2025
Page 3 of 9

the mediation.

On December 14, 2023, Spasojevich filed a status report in which he represented to the Court that the Parties "have reached an agreement in principle to resolve this matter." [ECF Doc. 24]. The Parties exchanged drafts of the formal settlement agreement that was to contain all terms and conditions of the Principal Settlement Agreement. On January 29, 2024 Plaintiffs' Counsel filed a joint application for an extension of time to finalize and submit a formal settlement agreement.

On February 29, 2024, Plaintiffs filed a consent to change attorney form in which Mr. Spasojevich was to be replaced as counsel by Troy Law, PLLC. Mr. Troy subsequently filed a request for an extension of time on February 29, 2024. [ECF Doc. 28]. In his request, Mr. Troy indicated that Plaintiffs were considering whether or not they wished to execute a formal settlement for the Court's approval or whether they wished to proceed with their claims. On March 13, 2024, the Court entered an Order denied Mr. Troy's request to enable Plaintiffs to proceed with their claims and instead directed that the Parties file a settlement agreement for judicial review on or before March 29, 2024.

On March 28, 2024, Defendants filed a Motion seeking a hearing in connection with the disputes over the Principle Settlement Agreement. On April 2, 2024, the Court directed that Mr. Spasojevich file an affidavit under deal outlining the settlement terms that were agreed upon at the mediation on or before April 10, 2024. Mr. Spasojevich filed, under seal, an affidavit with exhibits on April 10, 2024. On June 17, 2024, Defendants filed a Motion to Compel Enforcement of the Parties' Settlement Agreement. On January 2, 2025, the Hon. Arlene R. Lindsay entered a Report and Recommendation recommending that Defendants' Motion be granted in its entirety. On February 19, 2025, Your Honor ultimately adopted that report and recommendation and granted Defendants' Motion. Accordingly, the Parties now seek judicial approval of their Settlement Agreement in accordance with Your Honor's Order of February 19, 2025.

**Legal Standard**

In determining whether to approve the settlement, the Court is guided by the principles set forth in *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332 (S.D.N.Y. 2012) and *Cheeks v. Freeport Pancake House*, 796 F.3d 199 (2d Cir. 2015), cert. denied, 136 S. Ct. 824, 193 L. Ed. 2d 718 (2016). The Court must begin by assessing whether the agreement is fair and reasonable by examining the bona fides of the dispute. *See Moreno v. Nassau Country Club*, No. 12 CV 5324, 2013 U.S. Dist. LEXIS 157288, 2013 WL 5788730, *1 (E.D.N.Y. Sept. 26, 2013). In determining whether the agreement reflects a reasonable compromise of the plaintiff's claims, the Court should consider the following factors:

> "(1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length

**Zabell & Collotta, P.C.**
EMPLOYMENT COUNSELING, LITIGATION, LABOR & BENEFITS LAW

August 8, 2025
Page 4 of 9

bargaining between experienced counsel; and (5) the possibility of fraud or collusion."

*Beckert v. Rubinov*, No. 15 CV 1951, 2015 U.S. Dist. LEXIS 145632, 2015 WL 6503832, at *1 (S.D.N.Y. Oct. 27, 2015) (*quoting Wolinsky*, 900 F. Supp. 2d at 335) (internal quotation marks and further citation omitted). The Parties maintain that an application of the foregoing factors would confirm that the agreement reached at the mediation is a fair and reasonable agreement such that it would be approved.

1. **Analysis of Plaintiffs' Alleged Range of Recovery**

Plaintiffs' alleged range of recovery may be gleaned from the Proposed Amended Complaint that was filed as a part of Plaintiffs' Request for Leave to Amend [ECF Doc. 16-1]. Plaintiffs' respective allegations are as follows:

   a. **Fausto Delgado**

Mr. Delgado alleges he was employed for a total of seven and a half (7.5) months – from July 2020 through October 2020 and against from March 3, 2021 through July 19, 2021. ¶ 16 – 17. Mr. Delgado alleges he consistently worked six (6) days per week and that he worked between seven and a half (7.5) and ten (10) hours per day. ¶ 18. Mr. Delgado alleges he worked between forty-five (45) and sixty (60) hours per week. ¶ 20. Mr. Delgado alleges he was paid $22.00 per hour for all hours worked – including hours worked in excess of forty (40) in a given work week. ¶ 21. Assuming for the purposes of this application that Mr. Delgado's allegations were accurate, his total damages for the alleged underpayment of wages would be $137.50 per week. This figure is reached by factoring his alleged underpayment ($11.00 per hour for each overtime hour worked) by the midpoint of the range of hours he alleges to have worked – 52.5 (12.5 overtime hours). Applying these alleged weekly damages across the approximately thirty-two (32) weeks Mr. Delgado alleges to have worked yields a total of $4,400.00 in alleged unpaid wages.

Mr. Delgado also asserted retaliation claims. The allegations surrounding such claim are sparse and are alleged to have occurred approximately one (1) year after Mr. Delgado ceased working. Mr. Delgado alleges that Mr. Tacoris barged into the home of Mr. Delgado and Mr. Jarquin on July 10, 2022. ¶ 40. These allegations have been expressly denied by the Defendants.

   b. **Marco Antonio Jaruquin**

Mr. Jaruquin alleges he was employed for a period of between two (2) and three (3) months. ¶ 23. Mr. Jaruquin alleges he commenced employment in May 2021 and that he resigned in or around July 2021. ¶ 23 – 24. Mr. Jaruquin alleges he worked six (6) days each week for a total of sixty-nine (69) to seventy-five (75) hours per week. ¶ 27. Mr. Jaruquin alleges he was paid $18.00 per hour for all hours worked. ¶ 28. Assuming for the purposes of this application that Mr. Delgado's allegations were accurate, his total damages for the alleged underpayment of wages would be $288.00 per week. This figure is reached by factoring his alleged underpayment ($9.00



per hour for each overtime hour worked) by the midpoint of the range of hours he alleges to have worked – 72 (32 overtime hours). Applying these alleged weekly damages across the approximately ten (10) weeks Mr. Jaruquin alleges to have worked yields a total of $2,880.00 in unpaid wages.

Mr. Jaruquin also asserted retaliation claims. The allegations surrounding such claim are sparse and are alleged to have occurred approximately one (1) year after Mr. Delgado ceased working. Mr. Jaruquin alleges that Mr. Tacoris barged into the home of Mr. Delgado and Mr. Jaruquin on July 10, 2022. ¶ 40. Mr. Jaruquin also alleges that Mr. Tacoris threatened to call immigration services on Mr. Jaruquin. ¶ 39. There are no allegations identifying when the threat was allegedly made. These allegations have been expressly denied by the Defendants.

    c. **Luis Chucino**

Mr. Chucino alleges he was employed for a period of between two (2) and three (3) months. Mr. Chucino alleges he commenced employment in August 2020 and that his employment ended in or around October 2020. ¶ 29. Mr. Chucino alleges that he worked six (6) days per week for a total of sixty-two (62) hours half of the weeks he worked and seven (7) days per week for a total of seventy-two (72) hours the other half. ¶ 30 – 31. Based upon the allegations, Mr. Chucino alleges having worked approximately ten (10) total weeks – five (5) of which he worked sixty-two (62) hours and five (5) of which he worked seventy-two (72) hours. Mr. Chucino alleges he was paid $19.00 per hour for all hours worked. ¶ 36. For the weeks in which he worked sixty-two (62) hours, Mr. Chucino alleges damages of $209.00 per week (22 overtime hours x $9.50 overtime differential). For the weeks in which he worked seventy-two (72) hours, Mr. Chucino alleges damages of $304.00 per week (32 overtime hours x $9.50 overtime differential). Thus, Mr. Chucino alleges total unpaid wages in the amount of $2,565.00. Mr. Chucino does not assert any retaliation claims.

Between the three (3) Plaintiffs, they assert total unpaid wages of not more than $9,845.00 and liquidated damages in an equal amount. Plaintiffs Delgado and Jaruquin asserted no damages resulting from the retaliatory acts allegedly taken by Mr. Tacoris. Importantly, Defendants maintain that each Plaintiff was paid overtime in accordance with the FLSA and NYLL deny all allegations of retaliation. Notably, Mr. Tacoris is not an owner of Defendant All Shore – the company is owned by Brian Neil. Mr. Tacoris is an employee of the company.

    2. **Analysis of Plaintiffs' Avoidance of Burdens and Expenses**

This matter was resolved as a part of early mediation efforts. Based upon its early resolution, Plaintiffs avoided time and resources that would be presented by a prolonged litigation. Regarding costs, Plaintiffs avoided the expenses that would result from depositions as well as potential trial preparation. Moreover, Plaintiffs avoided time commitments that would be required to advance this litigation through trial. Plaintiffs were not required to participate in full written discovery or depositions. Plaintiffs also avoided days of trial preparation and trial proceedings.

**Zabell & Collotta, P.C.**
EMPLOYMENT COUNSELING, LITIGATION, LABOR & BENEFITS LAW

August 8, 2025
Page 6 of 9

3. **Analysis of Litigation Risks Plaintiffs Face**

By electing to resolve their claims, Plaintiffs also avoided substantial risks they would face were they to proceed with litigation. Plaintiffs' claims are disputed in their entirety. Defendants maintained contemporaneous time and payroll records that rebut the claims asserted by Plaintiffs. Specifically, prior to the mediation, Defendants produced time and payroll records that rebut the number of hours worked by Plaintiffs and their allegations that they did not receive overtime pay for hours worked in excess of forty (40) hours per week. The records indicate that during Plaintiffs' respective periods of employment, they typically worked between thirty-five (35) and forty-five (45) hours per week. The records do show some workweeks where Plaintiffs worked as many as fifty-six (56) hours. However, this was irregular and still substantially less than the average number of hours Plaintiffs allege to have worked during the brief terms of their employment. While Plaintiffs did receive payment by check and cash, there exist wage statements that confirm that Plaintiffs were paid overtime wages at an overtime rate of time and a half their regular rates of pay when they worked in excess of forty (40) hours per week.

Defendants also dispute and deny that any alleged retaliatory actions were taken against any Plaintiffs. Defendants deny that a threat was made to Mr. Jaruquin. The allegation itself is illogical as Mr. Jaruiquin presented documentation to Defendants at the time of his hire confirming his lawful status and authorization to work. Moreover, the allegations regarding Mr. Tacoris "barging" into the residence of Plaintiffs Delgado and Jaruquin have no merit. Moreover, even if true, there exists no alleged damages resulting from the accusations.

Based upon the foregoing risks of litigation, it must be held that the $14,000.00 settlement constitutes a fair and reasonable compromise. Importantly, the $14,000.00 exceeds the combined $9,845.00 Plaintiffs allege, as a best case scenario, that they were underpaid. Such recovery comes despite Plaintiffs facing the legitimate possibility that should this matter proceed to trial, they could lose on their claims and obtain no recovery. In fact, Defendants remain steadfast in their belief that they would ultimately prevail on all claims in light of the documentary evidence in their possession. The settlement offer extended was made as a business decision to avoid future legal expenses.

4. **The Settlement Agreement was the Result of Arms' Length Negotiations between Counsel Experienced in Wage & Hour Disputes**

Plaintiffs and Defendants were both represented at the mediation held on October 26, 2023 by attorneys with extensive experience in wage and hour litigations. A PACER search indicates that Mr. Spasojevich has appeared on seventy-five (75) separate litigations filed in the United States District Court for the Eastern District of New York. Moreover, there exists legal precedent recognizing his qualifications and experience. *See Cotton v. NY Minute Movers, Inc.*, No. 20-CV-6153-CBA-SJB, 2023 U.S. Dist. LEXIS 42771, at *4 (E.D.N.Y. Mar. 14, 2023) ("Because Spasojevich has over a decade of legal experience, the Court finds that it is appropriate to award

Zabell & Collotta, P.C.
EMPLOYMENT COUNSELING, LITIGATION, LABOR & BENEFITS LAW

August 8, 2025
Page 7 of 9

him an hourly rate within the range of that awarded to partners in this district."); *Nelson Meija Cedilos v. VEM Grp. Corp.*, No. 20-cv-3249 (E.D.N.Y. May 4, 2021) (approving Settlement Agreement submitted pursuant to *Cheeks* in which Mr. Spasojevich set his loadstar rate at $400.00 per hour.).

Moreover, the resolution was the product of negotiations held with the assistance of a neutral mediator, James A. Brown. Mr. Brown has extensive mediation experience and provided substantial assistance in the Parties efforts to reach a fair and reasonable resolution of the claims raised by Plaintiffs.

5. **There Exists No Fraud or Collusion**

As a final factor, it must be concluded that the Settlement Agreement is not the product of fraud or collusion. Once again, we reiterate that the resolution was reached during a mediation held with a highly experienced mediator.

We also note that Defendants do not seek to impose upon Plaintiffs any terms that would be inconsistent with the principles and guidelines established in *Cheeks*. Specifically, Defendants do not seek confidentiality of any kind. Moreover, in the Settlement Agreement, only mutual non-disparagement has been proposed. Furthermore, that mutual non-disparagement contained qualifying language that confirmed that the non-disparagement provision shall not "prevent any party to this agreement from making truthful statements about the terms of the settlement agreement or their experience in this litigation."

Accordingly, and for the reasons set forth more fully herein, the Parties maintain that the Settlement Agreement is fair and reasonable and entirely consistent with the guidelines set forth in *Cheeks*. The purpose of *Cheeks* is to ensure that agreements reached are fair and reasonable. It does not provide an opportunity for one party to unilaterally walk away from a binding and enforceable agreement.

**Attorneys' Fees are Fair and Reasonable**

"The court in such action [to recover unpaid minimum wages, unpaid overtime wages, or legal or equitable relief for retaliation] shall, in addition to any judgment award to plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the cost of the action." 29 U.S.C. § 216(b). Likewise under the NYLL, "[i]n any action instituted in the courts upon a wage claim by an employee… in which the employee prevails, the court shall allow such employee to recover the full amount of any underpayment, [and] all reasonable attorney's fees…." N.Y. Lab. L. § 198(1-a); *see also id.* §§ 215(2)(a), 633(1).

Plaintiffs, by virtue of obtaining a favorable settlement, are prevailing parties entitled to recover attorneys' fees and costs under the FLSA and NYLL. *See Callari v. Blackman Plumbing Supply, Inc.*, No. 11-cv-03655 (ADS) (AKT), 2020 WL 2771008, 2020 U.S. Dist. LEXIS 79882, at *22–23 (E.D.N.Y. May 4, 2020) (collecting cases).



August 8, 2025
Page 8 of 9

"The obligation [to review FLSA settlements for fairness] extends to the reasonableness of attorneys' fees and costs." *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 606 (2d Cir. 2020). "Nonetheless, even though a district court has a duty to review an FLSA settlement for reasonableness to prevent any potential abuse, this does not grant the court authority to rewrite contract provisions it finds objectionable." *Id.* (citing *Lilly v. City of New York*, 934 F.3d 222, 235 (2d Cir. 2019)) "Where the issue of fees and costs is presented in the context of a complete settlement agreement that includes an agreement with respect to fees and costs,… the settlement is submitted for approval, not adjustment or revision." *Id.* "If the district court determines that [a] proposed [fee] split [] is not reasonable, it shall reject the settlement, although it may advise the parties what it would find reasonable and give them an opportunity to reach a new agreement."

In assessing attorneys' fees in civil rights (including wage-and-hour) cases, courts "ordinarily award a lodestar fee, which is the product of the prevailing market rate for lawyers in the district and the number of hours a reasonable attorney would spend to litigate the case effectively." *See Tackie v. Keff Enterprises, LLC*, No. 14-cv-02074, 2014 WL 4626229, 2014 U.S. Dist. LEXIS 130148, at *14–15 (S.D.N.Y. Sep. 16, 2014). The amount is calculated based on "(1) a consideration of the number of hours actually spent by counsel and other personnel that are deemed reasonably necessary to the successful outcome for the client and (2) the setting of reasonable hourly rates for counsel, a criterion most recently, if opaquely, described as 'the rate a paying client would be willing to pay.'" *Briese Lichttechnik Vertereibs GmbH v. Langton*, No. 09-cv-09790 (LTS) (MHD), 2010 WL 3958737, 2010 U.S. Dist. LEXIS 107831, at *4 (S.D.N.Y. Oct. 4, 2010). The lodestar figure is thus often referred to as a "presumptively reasonable fee." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F. 3d 182, 190 (2d Cir. 2008). Attorneys' fees in civil rights cases "need not be proportional to the damages plaintiffs recover, because the award of attorneys' fees in such cases encourages the vindication of Congressionally identified policies and rights." *Allende v. Unitech Design, Inc.*, 783 F. Supp. 2d 509, 511 (S.D.N.Y. 2011). In considering a fee request, courts should thus avoid placing "an undue emphasis on the amount of plaintiff's recovery." *Id*. (quoting *Grochowski v. Ajet Constr. Corp.*, No. 97-cv-06269, 2002 WL 465272, 2002 U.S. Dist. LEXIS 5031, at *52 (S.D.N.Y. Mar. 27, 2002)).

Plaintiffs may recover attorneys' fees through the preparation of their fee application. *See Gagne v. Maher*, 594 F. 2d 336, 343–344 (2d Cir. 1979).

Pursuant to the Settlement Agreement, Plaintiffs' attorneys are to receive $3,000.00 for attorneys' fees and costs. *See* Sett. Agree. & Release ¶ 2(d). Plaintiffs' attorneys' lodestar is approximately $14,600.00, billed for about 48 hours of work, at rates of $650.00 per hour for a partner, $400.00 per hour for a senior associate (and at a half-rate of $200.00 per hour for administrative tasks), $250.00 per hour for a junior associate (and at a half-rate of $150.00 per hour for administrative tasks), and $150.00 per hour for staff. The foregoing rates have been awarded to Plaintiffs' counsel in this Court. *See, e.g.*, *Lin v. JD Produce Maspeth LLC et al*, No. 20-cv-02746 (WFK) (TAM), Dkt. No. 106 (Jan. 31, 2025); *Gu v. Lemonleaf Thai Restaurant Mineola Corporation*, No. 18-cv-6614 (PKC) (AYS), 2024 WL 3813379, 2024 U.S. Dist. LEXIS



105533, at *25 (E.D.N.Y. June 13, 2024), *adopted by* 2019 WL 5963864, 2019 U.S. Dist. LEXIS 196824 (E.D.N.Y. Nov. 13, 2019). Considering the procedural posture of this case, forty-eight hours of attorney time is reasonable. Considering the degree of recovery, and success, Plaintiffs' counsel achieved, an award of approximately one fifth (1/5) the lodestar is reasonable.

**Plaintiff's Position:**

In light of the Court's order enforcing the settlement agreement on the pain of dismissal, Plaintiff has dutifully complied with the Court Order in providing the Settlement Agreement and in cooperating with the submission of a joint fairness letter motion. In doing so, however, Plaintiff is not admitting that his damages are as outlined above or admitting that he believes that the settlement agreement is fair and reasonable under *Cheeks*.

## Conclusion

For the reasons set forth herein, the Parties request that the Court approve the Settlement Agreement in its entirety as it is a reasonable agreement reached as a result of arms'-length negotiations. The Parties thank the Court for its time and attention to this matter and remain available should Your Honor seek additional information in connection with this submission.

Respectfully submitted,

ZABELL & COLLOTTA, P.C.

*Ryan Eden*
Ryan M. Eden, Esq.

cc: All Counsel of Record (*via* Electronic Case Filing)
     Client